UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL WIRTH,

    Plaintiff,

v.                                                   Case No. 8:18-cv-2377-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### A. Procedural Background

Plaintiff filed an application for DIB (Tr. 179-80). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 71-93, 102-10). Plaintiff then requested an administrative hearing (Tr. 112-22). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 39-70). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 20-38). Subsequently, Plaintiff requested review from the Appeals Council, which

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

the Appeals Council denied (Tr. 9-14, 174-75). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1967, claimed disability beginning August 26, 2014 (Tr. 197). Plaintiff obtained a high school education and attended two years of college (Tr. 202). Plaintiff's past relevant work experience included work as an assistant retail manager, retail sales clerk, retail store manager, dietary aide, and a personnel clerk (Tr. 64-65, 202). Plaintiff alleged disability due to back pain, knee pain, arthritis, and depression (Tr. 201).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and that Plaintiff had not engaged in substantial gainful activity since August 26, 2014, the alleged onset date (Tr. 25). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis of the bilateral knees, status post arthroscopy of the right knee, and obesity (Tr. 25). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, crawl, crouch, kneel, stoop, and balance (Tr. 27). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 28).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could perform her past relevant work as a personnel clerk (Tr. 30). Given Plaintiff's background and RFC, the VE testified that Plaintiff could also perform other jobs existing in significant numbers in the national economy, such as an information clerk, a general clerical worker, and an inspector and sorter (Tr. 32). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can

perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

**III.**

Plaintiff argues that the ALJ erred by (1) failing to consider all of Plaintiff's impairments; (2) failing to properly consider the medical evidence; and (3) improperly affording the opinion of Dr. Tamika Singh only partial weight. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**A. Impairments**

Plaintiff first contends that the ALJ erred by failing to consider all of Plaintiff's impairments. Step two of the sequential evaluation process operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*). At step two, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 404.1522. A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031; *see Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. § 404.1522.

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis of the bilateral knees, status post arthroscopy of the right knee, and obesity (Tr. 25). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray*, 550 F. App'x at 853-54; *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Notwithstanding, as Plaintiff asserts, although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). In this instance, Plaintiff argues that the ALJ erred in his consideration of Plaintiff's back impairments by finding that only Plaintiff's degenerative disc disease constituted a severe impairment while failing to properly consider Plaintiff's sacroiliitis with sacroiliac dysfunction

and severe facet osteoarthropathy. As the Commissioner contends, however, the record reflects that the treatment notes pertaining to Plaintiff's sacroiliitis with sacroiliac dysfunction and severe facet osteoarthropathy predate the alleged onset date (Tr. 303-306), and such impairments appear rarely, if ever, in the record after the alleged onset date. Further, the ALJ's decision indicates that he thoroughly considered all of Plaintiff's back impairments in determining Plaintiff's severe impairments, RFC, and ability to perform past work and other work (Tr. 25-32). Accordingly, the ALJ did not err in his consideration of Plaintiff's sacroiliitis with sacroiliac dysfunction and severe facet osteoarthropathy.

### B. Medical Evidence

Plaintiff next contends that the ALJ erred by failing to properly consider the medical evidence of record. Namely, Plaintiff argues that the ALJ erred by finding that Dr. Singh only reported one instance of Plaintiff demonstrating an ataxic gait on examination, that the treatment history did not support Plaintiff's allegations, and that the conservative treatment history did not support a finding of disability. First, with respect to Dr. Singh's reference to an ataxic gait, the decision reflects that the ALJ considered Dr. Singh's treatment notes, indicating more than once that Dr. Singh noted an ataxic gait or limp (Tr. 29, 581, 594, 640). Though the ALJ inadvertently stated that "Dr. Singh reported one instance of ataxic gait" (Tr. 29), the ALJ references, in the same paragraph, another instance of ataxic gait documented by Dr. Singh. Accordingly, no reversible error can be attributed to this misstatement, as the decision reflects that the ALJ properly considered the evidence of record, including more than one instance of Plaintiff's ataxic gait when presenting to Dr. Singh after the alleged onset date.[2]

---

[2] As discussed more fully below, the ALJ properly considered all of Dr. Singh's findings and opinions in rendering the decision.

Next, Plaintiff contends that the ALJ erred in finding that Plaintiff's treatment history, conservative treatment, and medical signs did not support her allegations of disabling limitations (Tr. 28). In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. § 404.1529. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

As noted above, in the decision, the ALJ considered Plaintiff's subjective complaints of disabling limitations and determined that, though Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence of record (Tr. 28). In making that determination, the ALJ discussed Plaintiff's treatment history and medical signs (Tr. 28-29). Specifically, the ALJ stated that Plaintiff's treatment history did not support the allegations and, further, that the conservative treatment post knee arthroscopy, the lack of pain medications before August 2015, and the overall conservative treatment did not support disabling limitations (Tr. 28). In

addition, the ALJ indicated that the positive signs supported some degree of limitation, but not the degree alleged, while the negative signs established that Plaintiff maintained the ability to perform some level of work activity (Tr. 28-29).

As an initial matter, Plaintiff points to several diagnoses as a basis for a finding of disability or disabling limitations, but a diagnosis does not equate to a disability. Indeed, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*) (citation omitted). Furthermore, as noted above, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791 F.2d at 1547. Accordingly, Plaintiff's focus upon her several diagnoses for musculoskeletal impairments does nothing to further her position, where, as here, the evidence does not support a finding of disability.

Next, as the ALJ indicated, the evidence of record included several positive signs, such as limping, pain, and tenderness, indicating that Plaintiff experienced some degree of limitation, just not to the extent alleged by Plaintiff (Tr. 28-29). As the ALJ highlighted, however, the negative signs – including numerous instances of normal gait, station, muscle strength, muscle tone, and range of motion – demonstrated that Plaintiff was not as limited as alleged (Tr. 367, 372, 377, 382, 391, 446, 451, 519, 527, 547, 571, 612, 627, 633, 649, 657, 718, 727). In doing so, the ALJ provided substantial evidence in support of his finding.

With respect to Plaintiff's treatment history, the ALJ similarly provided substantial evidence in support of his finding (Tr. 28). As Plaintiff argues, part of Plaintiff's conservative

treatment history stemmed from the denial of her insurance company for a more invasive procedure and from body-weight issues postponing more intensive treatment options (Tr. 274-75, 335, 338-39, 537, 553). Notwithstanding, these did not constitute the *only* reasons—or even the primary reasons—for conservative care during the alleged period of disability. While Plaintiff failed conservative treatment in 2014, Plaintiff's improved physical functioning in subsequent examinations justified an overall conservative treatment plan during most of the alleged period of disability. Although the September 2014 arthroscopy did not eliminate Plaintiff's knee pain, treatment notes from multiple examinations shortly following the procedure indicated that Plaintiff demonstrated no muscle weakness or tenderness or knee pain (Tr. 274-81, 335-38, 343-46, 367, 369). Following the steroid injections in early 2015, Plaintiff most frequently exhibited normal joint function and movement of the extremities (Tr. 367, 369, 372, 451, 527, 718, 727). While Plaintiff continued to report various other types of pain in 2015, those ailments were less acute and generally responded positively to conservative treatment. Additionally, as the ALJ noted, Plaintiff indicated that she had not been on any pain medication regimen from the alleged onset date through August 2015, except for those medications prescribed for surgery (Tr. 28, 464)

Similarly, the record indicates that Plaintiff's improvements in her overall condition in 2016 and 2017 warranted more conservative care. Though 2015 X-rays of the bilateral knees showed moderate to severe arthritis with minimal joint space with some patellar subluxation laterally on the left (Tr. 337), Plaintiff's joint function, gait, muscle strength, and range of motion were mostly normal during that timeframe (Tr. 555, 571, 577, 612, 627, 633, 637, 649, 653). Considering the examination notes, the ALJ reasoned that Plaintiff's overall conservative treatment history did not support disabling pain or limitations (Tr. 28). Consequently, even if more aggressive treatment might have been warranted in late 2014, the ALJ relied on substantial

evidence in concluding that the overall treatment history did not reasonably support a finding of disability.

### C. Dr. Singh's Opinion

Finally, Plaintiff asserts that the ALJ improperly afforded only partial weight to Dr. Singh's opinions regarding Plaintiff's sitting and standing limitations. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(1). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 404.1527(c)(3). Further, the more consistent the medical opinion is with the entire record, the more weight that opinion will receive. 20 C.F.R. § 404.1527(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported

a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

Here, Dr. Singh submitted medical source statements detailing her opinions as to Plaintiff's functional limitations (Tr. 533, 584, 591). Dr. Singh opined as to Plaintiff's ability to sit, stand, walk, bend, kneel, crouch, climb, balance, drive lift, reach, and finely and grossly manipulate. Most notably, Dr. Singh opined that Plaintiff could not stand or sit for more than 15 minutes (Tr. 533, 584, 591).

Upon consideration of Dr. Singh's medical source statements, the ALJ afforded only partial weight to Dr. Singh's opinion (Tr. 30). In doing so, the ALJ indicated that, although Dr. Singh was a long-term treating physician, the standing and walking limitations she set forth were inconsistent with her own findings of normal gait, station, extremities, and peripheral joint function (Tr. 30). Indeed, during some examinations, Dr. Singh indicated that Plaintiff demonstrated an ataxic gait, evidence of a limp, or lower extremity weakness (Tr. 536, 555, 581, 594, 640). More often, however, Dr. Singh's treatment notes indicated that Plaintiff demonstrated a normal gait and station, normal muscle strength and tone, normal movements for the upper and lower extremities, and no swelling, stiffness, or pain (Tr. 367-83, 391, 446, 451, 467, 527, 571, 612, 633, 657). Given the discrepancy between Dr. Singh's treatment notes and her opinion as to Plaintiff's limitations, the ALJ properly afforded partial weight to Dr. Singh's opinion.

The other evidence of records likewise supports the ALJ's decision to afford partial weight to Dr. Singh's opinion. For example, Dr. Diana Vega similarly indicated that Plaintiff repeatedly presented with a normal gait and station with either mild or no musculoskeletal

issues noted (Tr. 519, 547, 627, 718, 727). Dr. Donald Sachs also noted in October 2014 that Plaintiff demonstrated no muscle weakness, full muscle strength, no tenderness in her back, full deep tendon reflexes, inversion and eversion of her feet within normal limits, and an ability to stand on her toes and heels without difficulty (Tr. 278-79). Given the inconsistencies between Dr. Singh's opinions and her own treatment records as well as with the other evidence of record, substantial evidence supports the ALJ's decision to afford Dr. Singh's opinions partial weight.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 19th day of March, 2020.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record